IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAYMOND DUNIVANT,     )
                      )
        Plaintiff,    )
                      )
    v.                )    1:19CV923
                      )
ANDREW SAUL,          )
Commissioner of Social Security, )
                      )
        Defendant.    )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Raymond Dunivant ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 5, 2016, alleging a disability onset date of April 1, 2015 in both applications. (Tr. at 26, 220-30.)[1] His applications were denied initially (Tr. at 75-96, 119-26) and upon reconsideration (Tr. at 97-118, 133-50). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

Law Judge ("ALJ"). (Tr. at 151-52.) On May 22, 2018, Plaintiff, along with his attorney, attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 26.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 36), and, on July 11, 2019, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 29.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar spondylosis; cervical spondylosis; thoracic spondylosis; right inguinal hernia and umbilical hernia; bilateral carpal tunnel syndrome; and obesity.

(Tr. at 29.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 30-31.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following, further limitations:

> he can frequently handle and finger with both upper extremities. [Plaintiff] can frequently push or pull and reach overhead with the left upper extremity. [He] can frequently kneel, crouch, stoop, and crawl, can occasionally climb stairs and ramps, can occasionally climb ladders, can never climb ropes and scaffolds, and can occasionally be exposed to vibrations. [Plaintiff] is able to understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions.

5

(Tr. at 31.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 34.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 35-36.)

Plaintiff now challenges the ALJ's finding at step five. In particular, Plaintiff contends that two of the three jobs identified by the vocational expert conflict with the Dictionary of Occupational Titles ("DOT") in violation of the Fourth Circuit's holdings in Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015), and Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019). While Plaintiff concedes that the third job identified by the vocational expert, marking clerk (DOT 209.587-034, 1991 WL 671802), does not conflict with the DOT, he further argues that one job cannot, by itself, constitute substantial evidence at step five.

The Fourth Circuit Court of Appeals has recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between VE testimony and the provisions of the Dictionary of Occupational Titles ("DOT"), regardless of whether a conflict is identified by the VE. Pearson, 810 F.3d at 208-09, 210. In Pearson, because of this apparent conflict between the VE's testimony and the DOT, remand was required so that the ALJ could elicit a reasonable "explanation from the expert" before relying on the expert's testimony. Id. at 208-209, 211. In 2019, in Thomas v. Berryhill, the Fourth Circuit applied the principles articulated in Pearson as they related to the DOT's Reasoning Development scale. See Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019). That scale has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See

6

DOT, App. C, 1991 WL 688702.[4] The DOT assigns a Reasoning Development Level to each occupation identified therein. In Thomas, the vocational expert identified three jobs, all with a Reasoning Level of 2, "requir[ing] employees to 'carry out detailed but uninvolved written or oral instructions.' By comparison, Thomas's RFC limit[ed] her to jobs that involve only 'short, simple instructions.'" Thomas, 916 F.3d at 314 (internal citations omitted). The Fourth Circuit found

> that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule— some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson. Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

Id. at 314.

Consequently, in Thomas, the Fourth Circuit held that there was an apparent conflict between jobs requiring Level 2 reasoning and a limitation to "short, simple instructions." Id.

---

[4] The Reasoning Levels relevant to this case, Level 2 and Level 3, are defined as follows:

LEVEL 3

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

U.S. Dept. of Labor, DOT, App. C, 1991 WL 688702.

However, in Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019), the Fourth Circuit clarified that this conflict results from the restriction to "short" instructions, rather than the simplicity of the instructions or tasks.

> "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include. In contrast, the [ALJ] found that Lawrence could perform jobs limited to "simple, routine repetitive tasks of unskilled work." There is no comparable inconsistency between Lawrence's [RFC] . . . and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few [ ] variables."

Id. (citations omitted).

Similarly, in the present case, there is no conflict between Reasoning Level 2 and Plaintiff's ability "to understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions." (Tr. at 31); see Gurley v. Saul, 2:19-cv-869, 2020 WL 6218459 at *7 (D.S.C. June 24, 2020) ("Because Plaintiff was limited to 'simple,' rather than 'short,' instructions, there is no apparent unresolved conflict between the ALJ's RFC recommendation and the jobs identified by the vocational expert."); Turner v. Saul, 5:19-CV-190-D, 2020 WL 3866669 at *10 (E.D.N.C. June 9, 2020) ("Under Lawrence, a hypothetical question limiting one to simple, oral instructions, simple, routine tasks, and simple, work-related decisions, is materially different from similarly restricting her to short tasks, instructions, or decisions. And simple instructions, tasks, or decisions do not create an apparent conflict with jobs the DOT classifies as reasoning level two.").[5] Plaintiff concedes

---

[5] In light of this determination, the Court need not reach the further issue of whether there is an unresolved, apparent conflict between jobs with a Reasoning Level 3 and Plaintiff's RFC limitation to simple instructions and simple work-related decisions. As further explained below, even if the two Reasoning Level 3 jobs identified by the vocational expert are eliminated, the ALJ was entitled to rely on the expert's testimony regarding the Reasoning Level 2 job of marking clerk, so any error is harmless.

as much in his brief. Nevertheless, he contends that the ALJ's identification of only one job with a Reasoning Level 2, marking clerk, runs afoul of "POMS DI 25025.030, which requires [the ALJ] . . . to cite three occupations that are examples of work the claimant could do given his or her impairment-related limitations and restrictions." (Pl.'s Br. [Doc. #12] at 8-9.) Where only one of the jobs identified by the ALJ meets these requirements, Plaintiff argues, "it cannot be clear that there are a significant number of jobs in the national economy." (Pl.'s Br. at 9.)

However, POMS provides guidance to ALJs, but is not binding here and does not have the force of law. Moreover, as Defendant correctly notes, "the same POMS section on which Plaintiff relies explains that the adjudicator 'may cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three occupation(s).'" (Def.'s Br. [Doc. #14] at 12) (quoting POMS DI 25025.030, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425025030). In fact, the relevant sections of the regulations specifically provide that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added).

Here, the vocational expert testified that 290,000 marking clerk jobs exist in the national economy. (Tr. at 35, 70); see Critchley v. Colvin, No. 5:15-cv-08288, 2016 WL 3030211, at *8 (S.D. W. Va. May 4, 2016) (collecting cases) (finding that even 5000 jobs in the national economy constituted a significant number); see also Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (holding that 110 jobs within the region is not "insignificant"); Cole v. Colvin, No. 1:13CV868, 2014 WL 4060145, at *4 (M.D.N.C. Aug. 14, 2014) (holding that

9

2,500 jobs in the state is significant and "the ALJ only needs to identify one job that [a claimant] can perform, given [the claimant's] RFC and vocational capabilities, that exists in the national economy in significant numbers."); Shaw v. Saul, 1:18CV268, 2019 WL 3577550 at *9 (M.D.N.C. Aug. 6, 2019) (holding "that 103,000 Room Attendant jobs existed in the national economy . . . which constitutes a significant number of jobs."). Because the number of marking clerk jobs clearly exceeds the number of jobs constituting a "significant number" in the national economy, substantial evidence supports the ALJ's finding at step five of the sequential analysis.

In his Reply Brief, Plaintiff for the first time raises a new contention, claiming that the ALJ's decision is not supported by substantial evidence because "[t]he vocational witness did not identify her source for the numbers of jobs in the national economy for marking clerks." (Reply [Doc. #15] at 6.) However, Plaintiff was required by this Court's Opening Order [Doc. #9] to raise any claims in his initial Motion and Brief, setting out his objections to the Commissioner's decision "or any aspect of the record which counsel contends is erroneous." Therefore, Plaintiff's new challenge to the vocational expert's testimony based on her failure to identify the source for the job numbers is not properly before the Court. See Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (collecting social security decisions recognizing that failure to raise issue in opening memorandum waives that issue). Moreover, even if this contention were considered, it would not require remand. The Supreme Court recently rejected a categorical rule that a vocational expert's failure to provide data underlying his or her job estimates precludes the expert's testimony from serving as substantial evidence. See Biestek v. Berryhill, 139 S. Ct. 1148 (2019). In addition, in the

Case 1:19-cv-00923-WO-JEP   Document 16   Filed 02/17/21   Page 10 of 11

present case, the ALJ accepted and relied on the vocational expert's testimony and there is no reason to question that determination, particularly where counsel for Plaintiff did not request the data relied on by vocational expert, or even question her regarding the source of the numbers, and specifically noted no objection to her testifying as an expert. (Tr. at 66-73); see also Tim J.S. v. Saul, 4:19CV1709, 2020 WL 1888820 at *8 (E.D. Mo. Apr. 16, 2020) ("Plaintiff has failed to marshal argument or evidence beyond mere speculation to undermine the vocational expert's testimony and thus cannot establish that the ALJ erred by relying on that testimony.").

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Judgment of the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 17th day of February, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge